**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| BEN  HAWKINS, *on behalf of himself and* *all others similarly situated*, | : : : | |
| Plaintiff, | : : | Civil Action No.  _____ |
| v. | : : | **JURY TRIAL DEMANDED** |
| NAVY FEDERAL CREDIT UNION, | : : : | |
| Defendant | : : | |
| _____ | : | |

## CLASS ACTION COMPLAINT

1.      Plaintiff Ben Hawkins ("Plaintiff"), *on behalf of himself and all others similarly situated*, brings this class action against Navy Federal Credit Union ("NFCU" or "Defendant") to secure redress for its sending numerous nonconsensual, autodialed text message calls to the cellular telephone numbers of Plaintiff and others nationwide, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2.      Plaintiff received nearly 500 nonconsensual, autodialed text message calls from NFCU even though Plaintiff has never been a customer of, nor maintained accounts with, NFCU.

3.      The text messages sent to Plaintiff related to financial products and accounts offered by NFCU.

## INTRODUCTION

4.      Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money. As a

result, the federal government and numerous states have enacted legislation to combat these widespread abuses. See *Mims v. Arrow Fin. Servs*., LLC, 565 U.S. 368, 371 (2012) (noting that federal legislation – the TCPA – was enacted after Congress found that callers, "by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls").

5.      As is relevant here, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).

6.      Text messages, including the ones received by Plaintiff and the members of the Class, are "calls" under the TCPA. *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

7.      The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

8.      NFCU caused hundreds of unsolicited, autodialed text message calls to be made to Plaintiff's cell phone, causing Plaintiff aggravation and inconvenience. Plaintiff files this class action complaint on behalf of himself and others similarly situated, seeking relief from NFCU's illegal calling practices.

## JURISDICTION AND VENUE

9.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. *Mims*, 565 U.S. at 372.

10.      Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2).  The matter in controversy

exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a nationwide class, which will result in at least one Class member residing in a state different from Defendant.

11.     Venue is appropriate in this District under 28 U.S.C. § 1391(a) because NFCU is headquartered in Vienna, Virginia and because a substantial portion of the events giving rise to this cause of action occurred in this District.

## PARTIES

12.     Plaintiff Ben Hawkins is a natural person and a citizen of the State of Kentucky. Plaintiff resides in Hardin County, Kentucky. At all relevant times, Plaintiff was the subscriber for the cellular telephone at issue.

13.     Defendant, NFCU, is a technology-driven financial services company providing a diverse range of banking products and services nationwide, including mobile banking services, for current and former military service members, their families, and household members. Defendant is the largest credit union in the U.S. and currently has over 8 million members.

## FACTS

14.     Plaintiff has received nearly 500 autodialed text messages on his cell phone from NFCU relating to various banking services and products offered by, managed, and directed by NFCU in the past four years.

15.     For example, on January 4, 2017, Plaintiff received an autodialed text from NFCU on his cell phone stating in part "Free NFCU Alert. Debit Card ending in 8526 expires 04/17.  To auto renew, use your card within the next two months."  Another example is an autodialed text from NFCU received by Plaintiff on his cell phone on July 15, 2017 stating in

part "The current balance of S1 is $0.00. The balance may not reflect recent transactions.  Use LAST to view recent activity."

16.     Plaintiff received these and hundreds of other unauthorized autodialed texts messages on his cell phone from Defendant even though Plaintiff does not have, and has never had, an account, credit card, or debit card issued by NFCU.  Indeed, Plaintiff has never been a customer or member of NFCU, and NFCU did not have Plaintiff's consent to send text messages to his cell phone.

17.      Within the four years prior to the filing of this action, NFCU caused at least thousands of autodialed text message calls to be made to the cell phones of Plaintiff and thousands of other consumers without the prior express consent of the called party.

18.     NFCU caused the text message calls at issue to be made using an automatic telephone dialing system, as that term is used in the TCPA.

19.     NFCU's texts were sent by texting vendor Fiserv. Fiserv used a legacy system purchased Monitise to make these calls. The Monitise system, has been held to be an automatic telephone dialing system before. Alternatively, NFCU used a system that works similarly to the Monitise system, in that it sends texts automatically and without human intervention

20.     The equipment used to call Plaintiff and others not only had the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically call such numbers when it made the unauthorized text calls to Plaintiff and the Class. These calls were made as part of a system where thousands of text messages were sent in a short period of time without human intervention, as part of an automated process.

21.     The equipment at issue stored or produced telephone numbers to be called using a random or sequential number generator, and dialed such numbers, including Plaintiff's.  In other words, no human being physically dialed each digit of Plaintiff's and the other Class members' telephone numbers to call their cell phones—the text calls were made automatically pursuant to a computer program that was programmed to automatically decide what phone numbers to call when, and what to include in the texts.

22.     The autodialer accessed a dataset of Defendant, sorted through that dataset to determine which data to use to generate numbers to call, generated a sequence for calling those numbers based upon complex algorithms, and then sent the texts at issue. The dialer randomly and sequentially generated phone numbers for calling from a dataset, and then automatically called those numbers.

23.     These violations were negligent. Alternatively, Defendant made these calls to Plaintiff and the other members of the Class defined below intentionally. Defendant was well aware of the TCPA's prohibitions against use of autodialers in calls to consumers (as demonstrated by other TCPA litigation involving NFCU) but made the business decision to send these text messages, anyway. NFCU has been sued under the TCPA before, but continues to send nonconsensual, automated text messages. It is thus apparent that in addition to monetary relief, injunctive relief is necessary to wrench compliance.

24.     Upon information and belief, NFCU or its vendors keep records and data from which it can determine which autodialed text message calls were made without consent.

25.     Plaintiff and the Class have been damaged by these calls. Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use of their cell phones preventing the phones from being used, and they were forced to divert attention away

from other activities to address the text messages. Defendant's text messages were annoying and a nuisance and wasted the time of Plaintiff and the Class. See, e.g., *Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to autodialed calls).

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action on behalf a class, defined as follows: All non-customers in the United States whose cellular telephone number (a) NFCU, or someone on its behalf, placed a text message, (b) concerning NFCU or an NFCU product, service or account (c) using the same or similar system used to place any text message call to Plaintiff's cell phone number.

27.     Based upon the automated nature of the text messages at issue, it is reasonable to infer that Defendant placed thousands of such text messages since the date four years prior to the filing of this case.

28.     Common questions of law or fact exist as to all members of the Class, which predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the Class include but are not limited to:

a.     Whether the text messages identified herein were made using an "automatic telephone dialing system" or an "artificial or prerecorded voice" as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

b.     Whether Defendant had "prior express consent" to make the text message calls to non-customers and non-members, such as Plaintiff and the Class; and

c.     Damages, including whether any violations were performed willfully or knowingly such that Plaintiff and the other members of the Class are entitled to treble damages under 47 U.S.C. § 227(b)(3).

29.     Plaintiff's claims are typical of the claims of the other members of the Class. The factual and legal bases of Defendant's liability to Plaintiff and the other members of the Class are the same: Defendant violated the TCPA by causing autodialed text message calls to be made to the cellular telephone number of each member of the Class, without permission.

30.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that might conflict with the interests of the Class. Plaintiff is interested in pursuing his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

31.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are, on information and belief, tens of thousands of Class members, such that joinder of all members is impracticable.

32.     No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

33.     Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making injunctive or declaratory relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

34.     The identity of the Class is, on information and belief, readily identifiable from Defendant's records.

## COUNT I
## Violations of the TCPA, 47 U.S.C. § 227
(Autodialed and/or Artificial or Prerecorded Text Call Violations)

35.     Plaintiff re-alleges and incorporates all foregoing allegations.

36.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a ... cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).

37.     A text message is a "call" under the TCPA. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 951 (9th Cir. 2009).

38.     Defendant initiated or caused to be initiated text message calls to the cellular telephone numbers of Plaintiff and the other members of the Class using an automatic telephone dialing system or an artificial or prerecorded voice.

39.     These calls were made by Defendant to non-customers and non-members — persons who had not previously provided permission to receive texts from Defendant.

40.     Defendant violated the TCPA when it made the text calls alleged herein.

41.     As a result of Defendant's conduct, and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the Class were harmed and are each entitled to a minimum of $500 in damages for each violation.

42.     Moreover, given the facts and circumstances here, including the repeated, automated nature of the text message calling, injunctive relief is necessary to wrench

compliance. Plaintiff and the Class therefore request an injunction against future automated text calls to non-customers and non-members, pursuant to 47 U.S.C. § 227(b)(3).

43.     Because Defendant knew or should have known that neither Plaintiff nor the Class had given prior express consent to receive text messages to their cell phones—and/or willfully caused such text message calls to be made to the cell phones of Plaintiff and the other members of the Class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the Class, pursuant to Section 227(b)(3) of the TCPA. *Krakauer v. Dish Network LLC*, 2017 WL 2242952 (M.D.N.C. May 22, 2017) (trebling TCPA damages after $21M jury verdict in favor of class).

**WHEREFORE,** Plaintiff Ben Hawkins, individually and on behalf of the Class, respectfully requests that the Court enter judgment against Defendant for:

A.     Certification of the Class as alleged herein and appointment of Plaintiff's Counsel as Class Counsel;

B.     A declaration that Defendant violated the TCPA as to Plaintiff and the Class;

C.     Injunctive relief aimed at preventing future automated calls to non-customers' and non-members' cell phones;

D.     Damages pursuant to 47 U.S.C. § 227(b)(3);

E.     Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.     Such other or further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

/s/ David J. Dickens
David J. Dickens, Esq., VSB 72891
THE MILLER FIRM, LLC
108 Railroad Avenue
Orange, VA, 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
Email: ddickens@millerfirmllc.com

Alexander H. Burke (pro hac vice to be filed)
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Tel: (312) 729-5288
Email: aburke@burkelawllc.com

Jeffrey S. Goldenberg (pro hac vice to be filed)
GOLDENBERG SCHNEIDER, L.P.A.
1 W. 4th St., 18th Floor
Cincinnati, OH 45202
Telephone: (513) 345-8291
Email: jgoldenberg@gs-legal.com

Joseph M. Lyon (pro hac vice to be filed)
THE LYON FIRM
2754 Erie Ave.
Cincinnati, OH 45208
Telephone: (513) 381-2333
Email: jlyon@thelyonfirm.com

***Counsel for Plaintiff and the Class***